IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| GAYLA J. WHITE, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   CIVIL ACTION NO. |
|     v. | )   1:11-cv-408-MHT |
| | )       (WO) |
| WELLS FARGO HOME MORTGAGE, | ) |
| d/b/a America's Servicing | ) |
| Company, | ) |
| | ) |
|     Defendant. | ) |

<u>OPINION AND ORDER</u>

Plaintiff Gayla J. White brought this lawsuit in Alabama state court claiming that defendant Wells Fargo Home Mortgage breached the terms of her mortgage contract and committed various state-law torts, including fraud, negligence, and defamation. Wells Fargo subsequently removed the case to this court under 28 U.S.C. §§ 1331, 1332, 1441, & 1446. The case is currently before the court on White's motion to remand. For the reasons that follow, that motion will be granted.

## I.   BACKGROUND

This is one of the many state-law tort and contract cases arising out of the recent mortgage crises.[1]  White, a resident of Alabama, executed a mortgage on her home in Dothan.  She now contends that Wells Fargo, along with other unnamed companies responsible for servicing her mortgage, routinely charged "unidentified, unauthorized, and unearned fees," including late fees for payments that were timely submitted.  In addition, White claims that Wells Fargo violated the terms of her mortgage by, among other things, placing flood and property insurance on her mortgage account.

---

1.  See, e.g., Brown v. Ocwen Loan Servicing, LLC, __ F. Supp. 2d __, 2011 WL 2650232 (M.D. Ala. July 6, 2011) (Thompson, J.); Warren v. Bank of Am., 2011 WL 2116407 (S.D. Ga. May 24, 2011) (Edenfield, J.); Ozoria v. Deutsche Bank Trust Co. Ams., 2011 WL 1303270 (S.D. Fla. Mar. 31, 2011) (Cooke, J.); Locke v. Wells Fargo Home Mortg., 2010 WL 4941456 (S.D. Fla. Nov. 30, 2010) (Cooke, J.); Macks v. U.S. Bank Nat'l Ass'n, 2010 WL 2976200 (M.D. Ala. July 23, 2010) (Thompson, J.).

White alleges that Wells Fargo's actions "forced [her] to seek a loan modification." To that end, she contacted Wells Fargo in October 2010. According to her, Wells Fargo misrepresented the nature of and requirements for such a modification. For example, she alleges that Wells Fargo unnecessarily encouraged her to permit her account to become more than 90-days delinquent, asserting such steps were necessarily for approval. Moreover, Wells Fargo allegedly told White that the modification would be governed by the Home Affordable Modification Program ("HAMP") and would thus be protected from foreclosure during the loan-modification period.[2] Nevertheless, while White's application was pending, Wells Fargo commenced foreclosure proceedings.

---

2. Congress created HAMP as part of the Emergency Economic Stabilization Act of 2008. Ozoria v. Deutsche Bank Trust Co. Ams., 2011 WL 1303270, at *1 (S.D. Fla. Mar. 31, 2011) (Cooke, J.). The program is designed to reduce foreclosures by encouraging companies that service home mortgages to provide eligible home owners with permanent loan modifications. Id.

Faced with a possible foreclosure, White filed this action in a state court on April 25, 2011. Her complaint alleged breach of contract and nearly a dozen state-law torts, including fraud, negligence, intentional infliction of emotional distress, trespass, and defamation. As for relief, White requested compensatory and punitive damages, but did not move for an injunction against foreclosure or seek rescission of her mortgage.

Wells Fargo timely removed the case to this court, asserting subject-matter jurisdiction based on both federal question, 28 U.S.C. § 1331, and diversity of citizenship, 28 U.S.C. § 1332. White subsequently moved for remand, alleging that her claims do not raise a significant issue of federal law and that Wells Fargo has failed to show that the amount-in-controversy requirement of diversity jurisdiction is satisfied.

## II.   FEDERAL-QUESTION JURISDICTION

"[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   In general, a case "arises under" federal law if the plaintiff pleads a cause of action created by federal law or if a substantial disputed area of federal law is a necessary element of a state-law claim.   <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 9-10 (1983).   However, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."   <u>Merrell Dow Pharm. Inc. v. Thompson</u>, 478 U.S. 804, 813 (1986).   Nor are federal issues "a password opening federal courts to any state action embracing a point of federal law."   <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314 (2005).   Rather, federal-question jurisdiction based on an embedded federal issue is permissible only when "a state-law claim necessarily raise[s] a stated federal

issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Id</u>.

Wells Fargo submits that this court has subject-matter jurisdiction over White's ostensibly state-law claims because adjudicating those claims would require a court to resolve important federal issues related to HAMP.  This is simply not the case.

First of all, the vast majority of White's causes of action have nothing to do with HAMP.  For example, it appears from the complaint that a court could resolve White's state-law claims of trespass, defamation, breach of contract, negligent hiring, negligent training, and negligent supervision without ever mentioning HAMP or otherwise considering the program's application to White's mortgage.

Second, most of White's remaining claims, while indirectly related to HAMP, would not require a court to

rule on any disputed issues of federal law.  For example,
White claims that, by participating in HAMP, Wells Fargo
is contractually obligated to apply the Home Affordable
Modification Program Guidelines ("HAMPG") to its loan
modifications and that those guidelines require the
waiver of unpaid late fees.  However, whether Wells Fargo
actually complied with that requirement is irrelevant to
White's allegation that Wells Fargo committed fraud when
it told White that her loan history could be "'fixed' or
'cured' with a ... loan modification."  Compl. ¶ 32(g)
(Doc. No. 1).  In this instance, "HAMP appears to merely
form part of the backdrop of an otherwise purely state
law dispute.  As the Supreme Court has admonished 'it
takes more than a federal element to open the arising
under door.'"  Melton v. Suntrust Bank, __ F. Supp. 2d.
__, 2011 WL 1630273, at *1 (E.D. Va. Apr. 21, 2011)
(Smith, J.) (quoting Empire Healthchoice Assurance, Inc.
v. McVeigh, 547 U.S. 677, 701 (2006)) (internal quotation
marks omitted).

Finally, a small number of White's claims rely on her assertion that the application of HAMPG to her particular mortgage precluded Wells Fargo from initiating foreclosure proceedings.  However, whether Wells Fargo complied with those guidelines "appears to be a fact-specific inquiry--not a 'nearly pure issue of law' which could be expected to govern numerous other cases." Rathore v. Bank of Am., N.A., 2011 WL 2077538 (E.D. Va. May 24, 2011) (Hudson, J.) (quoting Empire HealthChoice, 547 U.S. at 700 (internal quotation marks omitted)). Moreover, the resolution of that issue likely rests, not on an interpretation of HAMPG, but on the nature of the contract between White and Wells Fargo.  It is therefore state contract law (not federal law) that governs.  The court can find no reason to disturb the traditional balance between federal and state responsibilities by treating this case (and therefore countless similar state-law tort and contract disputes) as raising a substantial federal question.  See Bennett v. Bank of

Am., N.A., 2011 WL 1814963, at *2-3 (E.D. Va. May 11, 2011) (Spencer, J.) (determining that a similar dispute was a creature of Virginia contract law and remanding it to the state court).

### III. DIVERSITY JURISDICTION

For purposes of removal pursuant to diversity-of-citizenship jurisdiction, where, as here, damages have not been specified by the plaintiff, a removing defendant has the burden of proving by a preponderance of the evidence that the $ 75,000 amount-in-controversy requirement is met. Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002). While the court may use "deduction, inference, or other extrapolation" in assessing the amount in controversy, it must do so based on "facts or specific allegations" contained in the record. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 753 (11th Cir. 2010). Without "facts or specific allegations, the amount in controversy c[an] be divined

only by looking at the stars--only through speculation--
and that is impermissible." Id. at 753-54 (internal
quotation marks and alterations omitted). In considering
the relevant evidence, this court's obligation to
narrowly construe removal statutes requires that
uncertainties be "resolved in favor of remand." Burns v.
Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

White does not specify the amount of damages she
seeks, but it is difficult to imagine that her claims,
which rest primarily on allegedly excessive fees that
Wells Fargo charged during the five years it serviced her
$ 150,000 home mortgage, are worth more than half the
initial value of that mortgage. Nevertheless, Wells
Fargo contends that this case belongs in federal court
based on (1) the "value of the property at issue," (2)
the loss attributable to White's "decision not to
refinance her mortgage based on Wells Fargo's promises to
modify her loan," and (3) White's failure to
make payments on the mortgage during the pendency of this

litigation.  Def.'s Opp. to Pl.'s Mot. to Remand 5 (Doc.
No. 12); <u>see</u> 28 U.S.C. § 1332.   Those arguments do not
persuade the court.

   As to jurisdiction predicated on the value of the
home, it is undisputed that the original principal of
White's mortgage was $ 150,000 and that she continues to
owe a similar amount.  But neither the total value of the
property, nor White's current debt, represents the amount
in controversy because White does not challenge the
validity of the mortgage or seek an injunction
prohibiting foreclosure.  See <u>James v. U.S. Bank Nat'l</u>
<u>Ass'n</u>, 2009 WL 2170045, at *2 (M.D. Ala. July 17, 2009)
(Thompson, J.).  As a result, title to the home is not in
dispute.

   Instead, White seeks damages based on Wells Fargo's
alleged practice of misrepresenting the nature of White's
obligations and charging unjustified fees.  As White
explains, "The amount in controversy is [primarily] the
money collected by the Defendant not in accordance with

the note, mortgage, loan modification, and their representations." Pl.'s Resp. to Def.'s Opp. to Pl.'s Mot. to Remand 6 (Doc. No. 13) (emphasis removed). Neither party offers an estimate for that amount, but it is difficult to imagine that more than $ 75,000 in improper fees and related charges--an amount half the initial size of White's mortgage--accumulated in the five years between the issuance of the mortgage and the date White brought this action.

Next, Wells Fargo submits that White's breach-of-contract claim provides a separate and sufficient basis for establishing the requisite amount in controversy. In support of this argument, Wells Fargo focuses on White's allegation that its contractually prohibited actions caused her to "[d]elay[] or fail[] to inquire into a refinance." Compl. ¶¶ 34, 40, 42 (Doc. No. 1). Wells Fargo interprets this allegation as a contention that, but for its "alleged promises that [White] would be approved for a HAMP modification," White would have

12

"refinance[d] the loan." Notice of Removal 5 (Doc. No. 1).

Wells Fargo's argument fails because it provides absolutely no relevant evidence regarding any damages that might have resulted from White's delay. To calculate that figure, a court would have to compare the value of any loan that White might have received in October 2010 when, instead of seeking refinancing, she applied for a loan modification with Wells Fargo, to the value of any loan that she might have obtained at the time she uncovered the alleged wrongdoing. There is no evidence before the court that would enable it to make that comparison.

Instead of providing the relevant data, Wells Fargo compares the value of White's current mortgage to that of an imaginary loan that she might have obtained by refinancing on May 5, 2011, two weeks <u>after</u> she brought this action. That calculation is besides the point. White does not claim that Wells Fargo fraudulently

13

induced her to take out the mortgage in the first instance; therefore the value of her initial mortgage is irrelevant. Similarly, May 5, 2011, is not the date that White is said to have uncovered the alleged wrongdoing, but rather a seemingly random date during the pendency of this action.

Moreover, even if Wells Fargo had identified the appropriate comparison, its calculation is based on an unsupported belief that White could have refinanced her home loan at a low interest rate, despite having bad credit, few assets, and a history of late mortgage payments. At this stage, the burden is on Wells Fargo to demonstrate that White might have actually obtained such refinancing.[3] Leonard, 279 F.3d at 972. It has failed to make such a showing and, in the absence of any "facts or specific allegations," speculation about White's

_____

3. White does not claim that she would have refinanced, only that she would have inquired into that possibility.

14

likelihood of success in the credit market would be "impermissible."   See Pretka, 608 F.3d at 753-54.

Finally, Wells Fargo argues that White's failure to make mortgage payments during the pendency of this action should be calculated as part of the amount in controversy.   Putting aside the fact that nothing about this litigation either precludes White from making mortgage payments or prevents Wells Fargo from using all legal means at its disposal to obtain any payments that it is owed, Wells Fargo estimates the value of this "relief" at only $ 11,674.80 per year.   Def.'s Opp'n to Pl.'s Mot. to Remand 9 (Doc. No. 12).   Even when considered along with the other potential relief available in this case, that relatively small sum is insufficient to carry Wells Fargo's burden of proving by a preponderance of the evidence that the amount in controversy is greater than $ 75.000.   Because Wells Fargo has failed to present any evidence that clearly establishes that the amount in controversy in this case

exceeds the jurisdictional threshold, this court lacks subject-matter jurisdiction under 28 U.S.C. § 1332 and remand is required.

***

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff Gayla J. White's motion to remand (Doc. No. 8) is granted and that, pursuant to 28 U.S.C. § 1447(c), this cause is remanded to the Circuit Court of Houston County, Alabama for want of jurisdiction.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 22nd day of August, 2011.

    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE